25 C.C.P.A. (Patents)

## In re GINSBURG.
### Patent Appeal No. 3922.

Court of Customs and Patent Appeals.

May 2, 1938.

Albion D. T. Libby, of Newark, N. J., and Lee L. Townshend, of Washington, D. C. (Harry B. Rook, of Newark, N. J., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner which rejected claims 16 to 20, inclusive, all of the claims of an application for a patent filed September 5, 1934, for a larvicide for killing mosquitoes, their larvæ and pupæ.

The references cited are as follows: Grant, 1,940,646, December 19, 1933; Bertsch, 1,968,794, July 31, 1934; Ginsburg and Forman, "Preliminary Studies on Causes and Remedies for Mosquito Breeding in Sewage Disposal Plants," Sewage Works Journal, July, 1930, pp. 412-418; Ginsburg, "Studies of Pyrethrum as a Mosquito Lar-

vicide," Proceedings of the Seventeenth Annual Meeting of the New Jersey Mosquito Extermination Association (1930) pp. 57-73; Smith, "One Year's Experience with Pyrethrum Larvicide," Id. (1932) pp. 128-131; Briscoe, "The Search for Soap Substitutes," The Chemical Trade Journal, January 22, 1932, pp. 76-78.

Claim 16 is illustrative and reads as follows: "16. A larvicide for killing mosquitoes, their larvæ and pupæ, on the surface of water including an oil, at least one oil-soluble material toxic to the mosquitoes, their larvæ and pupæ, and an emulsifier which will allow the larvicide ingredients recited to be mixed with fresh, hard and salt and/or sea water yet permitting the larvicide to quickly separate out from the water to which it is applied and rise to the surface thereof, thereby forming a thin layer of concentrated toxic material on the surface for the purpose described."

The claims relate to a composition for killing mosquitoes and include an insecticide known as pyrethrum, an emulsifier, oil, and water. Pyrethrum has been known and utilized for more than a century past as an insecticide.

The emulsifier used is set forth in claims 18 and 20 as a "water-soluble but non-oil-soluble emulsifier taken from a group consisting of alkali metal salts of sulphated higher alcohols, sulphated aliphatic compounds, and sulphated aromatic compounds." Claims 17 and 19 omit the restriction to a water-soluble but non-oil-soluble emulsifier and illustrative claim 16 is broad enough to include the emulsifier of the other two groups.

The appellant is a biochemist who has for years past made an intensive scientific study of the problem of mosquito eradication. He and a chemist named Forman described, in the Sewage Works Journal of July, 1930, the pertinent portion of which is a reference herein, a mosquito larvicide. It consisted of pyrethrum in kerosene oil emulsified with soap. This larvicide, which was described as efficient and practical when used to kill mosquito larvæ, was spread on the surface of mosquito-breeding water, the pyrethrum and oil forming a thin layer on the water surface. The killing agent pyrethrum was carried in the tiny oil globules. The soap in the emulsion, being water soluble, released the oil globules which remained on the surface.

Again, in 1930, about four years prior to the filing date of his application, there

was published in the Proceedings of the Seventeenth Annual Meeting of the New Jersey Mosquito Extermination Association a paper of which appellant was the author. This paper, which is a reference herein, set forth a mosquito larvicide said by appellant to have been proved by tests to be efficient, and which consisted of a light furnace oil, pyrethrum, and a soap emulsifier.

The use of soap as an emulsifier is old and admitted to be such in appellant's specification. While the use of the larvicide hereinbefore set out was apparently successful and efficient for use on fresh water, it was found that when used on salt water the soap reacted with the salt causing a breakdown of the emulsion. In the many salt marsh areas, prolific mosquito-breeding areas, the larvicide containing a soap emulsifier would not be effective. Appellant then sought to use a different emulsifying agent which would make an effective larvicide for use on fresh water, hard or soft, and also on salt or sea water. The specification states that appellant found that the sodium salts of sulphated aliphatic alcohols, such as sodium lauryl sulphate, sodium oleyl sulphate, and the like, were most suitable for use in place of soap as an emulsifier. With a composition made of pyrethrum, oil, water, and sodium lauryl sulphate as an emulsifying agent, the larvicide was found to be just as effective on hard or salt water as on fresh soft water.

While appellant's specification calls the emulsifier "a new chemical," he undoubtedly intended to mean a chemical to take the place of soap, as there is no contention that he lays claim to invention in the production of lauryl sulphate.

The Board affirmed the decision of the Examiner in which he said: "All the claims are rejected as being unpatentable over the known insecticidal composition consisting of pyrethrum, oil, an emulsifier, and water, as involving only the substitution of one known emulsifier for another."

The Grant patent relates to an insecticidal composition which consists of pyrethrum, oil, water, and an emulsifier which is a "sulfonate" derived oil. The only difference between this composition and that of the rejected claims would seem to be in the emulsifier.

Substitutes instead of soap as emulsifiers are not new, and their superiority over soap for many purposes has been well known.

The Briscoe reference, which the Examiner said was cited only for the purpose of showing some of the properties of soap substitutes, states that the sulphuric acid esters of higher alcohols have "excellent emulsifying properties far surpassing those of soap and the sulphonated oils" and that they are completely resistant to sea or hard water.

The Bertsch patent discloses a soap substitute which includes sodium lauryl sulphate, and states that the compound is useful in the making of insecticides.

We think that applying any well-known emulsifier as a substitute for soap does nothing more than put the substitute to its intended and obvious use.

In view of what has been said in this opinion, it is not deemed necessary to discuss the other references cited.

Appellant urges that in his application he has taken the last step to perfect his own previously perfected process which he developed after years of study and research. This contention can have no weight, because the additional step of adding a known emulsifier does not involve invention. His former process, however, published in 1930, became public property, since he did not file an application for patent within two years of its publication.

For the reasons above stated, the decision of the Board of Appeals is affirmed.

Affirmed.